**RHODE ISLAND HOSPITAL TRUST COMPANY, Plaintiff,**

v.

**LEO'S USED CAR EXCHANGE, INC., Defendant.**

Civ. A. No. 69-71.

United States District Court, D. Massachusetts.

May 27, 1970.

Henry Friedman, Boston, Mass., for plaintiff.

Edward Donnellan, Springfield, Mass., for defendant.

### OPINION

FRANCIS J. W. FORD, District Judge.

This is an action by plaintiff to recover damages for the alleged conver-

sion by defendant of three Cadillac automobiles. The facts have been stipulated and will be briefly outlined.

Plaintiff is a duly organized Rhode Island banking corporation having a place of business in Rhode Island. Villa Auto Sales, Inc., is a Rhode Island corporation doing business in Johnston, Rhode Island. (Prior to April 16, 1968 its corporate name was Villa & Martin Auto Sales, Inc.) Defendant is a Massachusetts corporation dealing in used cars and having a usual place of business in Springfield.

On April 16, 1968 and again on April 25, 1968 Villa executed a financing and security agreement granting plaintiff a continuing general lien and security interest in its entire inventory both present and thereafter acquired. These agreements were recorded with the Secretary of State of Rhode Island.

On September 16 and 25 and October 3, 1968 Villa borrowed money from plaintiff, executing promissory notes and chattel mortgages on specific items included in its inventory. Each of the three Cadillacs involved here was included in one of these chattel mortgages. A total amount of $15,500 was loaned to Villa by plaintiff on the security of these three cars.

On October 9, 1968 Villa caused these three Cadillacs to be delivered to Southern Auto, Inc., Warehouse Point, Connecticut, a corporation engaged in the business of auctioning automobiles. On that same day, before these three automobiles went through the auction they were purportedly sold to defendant. Villa executed bills of sale of the vehicles to defendant. Defendant gave Villa two checks totalling $15,150, the selling price of the three cars. (It is stipulated this was a fair wholesale market value for the three cars.) Defendant later that day stopped payment on these checks and has never honored them. Defendant at the time of the sale had no actual knowl-edge of plaintiff's security interest in the Cadillacs.

On October 15, 1968 plaintiff notified defendant of its security interest in the three Cadillacs and demanded return of the vehicles or their purchase price. Defendant has neither returned the cars nor paid over the purchase price.

The only issue is raised by defendant's contention that it is protected by the provisions of the Uniform Commercial Code [1] and specifically by Mass.G.L. Ch. 106, § 9–307, which provides:

> "(1) A buyer in ordinary course of business (subsection (9) of section 1–201) other than a person buying farm products from a person engaged in farming operations, takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

Section 1–201(9) contains the following definition:

> " 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. 'Buying' may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt."

These provisions will exonerate defendant only if its purchase of the cars was a transaction in the ordinary course of business. The sale of the cars took place at the usual place of business of neither the buyer nor the seller, but on the auction lot of a third party located in a state

---

[1]. The Uniform Commercial Code has also been enacted in Rhode Island and it is stipulated that in this respect the law of Rhode Island is the same as that of Massachusetts.

in which neither buyer nor seller was doing business. On these bare facts it cannot be held that the transaction was one in the ordinary course of business. Al Maroone Ford, Inc. for the benefit of Bank of Buffalo v. Manheim Auto, 205 Pa.Super. 154, 208 A.2d 290. C. Jon Development Corp. v. Pand-Rorsche Corp., 69 Ill.App.2d 469, 217 N.E.2d 416, relied upon by defendants, differs from the present case in that there the sale was made at the dealer's regular place of business. The conclusion must be that defendant is liable to plaintiff for the fair value of the three Cadillacs.

Judgment will be entered for plaintiff for $15,150 with interest from October 9, 1968.